18-1839-cr
United States v. Anderson

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2019
No. 18-1839

UNITED STATES OF AMERICA,
<u>Appellee</u>,

<u>v.</u>

RAFAEL OJEDA, AKA Papi, CALVIN OJEDA, AKA Killa, JONATHAN
OJEDA, AKA Shorty, AKA Chorty, SERVANDO JOSE GOMEZ, AKA June,
HECTOR TIRADO, AKA Hec, TRAVIS PROFIT, AKA Trap, ANGEL
SEPULVEDA, AKA A-Plus, EDUARDO VASQUEZ, AKA Spider, JASON
PEREZ, AKA Santana, TREVIS BOWENS, AKA T-Money, JHOVY
DIONIZIO, CHRISTIAN DUMES, AKA Gordo, CHRISTIAN RAMOS, AKA
Fatboy, PAQUITO RODRIGUEZ, AKA Frank, GISETTE RIVERA, SAMUEL
PALMER, AKA Junior, JOSE COLON, ANTOINE HENDERSON, AKA Will,
ADRIEL PONCE, AKA A., CHRISTOPHER RICHARDSON, AKA C.,
ROBERT MATOS, AKA Rob, AKA Smooth Baller, DARIEL ALVAREZ,
AKA Dynasty, AKA D., LOUIS DAVILA, AKA Bam, AKA Bam Bam,
WILBERT LEWIS, AKA Lil Bill, AKA LB., JAY CAPODIFERRO,
<u>Defendants</u>,

DWIGHT ANDERSON,
<u>Defendant-Appellant</u>.

ARGUED: SEPTEMBER 26, 2019

1

Before:      JACOBS, SACK, HALL, <u>Circuit Judges</u>.

In this sentencing appeal, the government has consented to a partial remand to the United States District Court for the Southern District of New York (Daniels, <u>J.</u>) because the district court erroneously assumed that it lacked authority to impose rather than merely recommend concurrent or consecutive sentences with respect to a yet-to-be-imposed state sentence.   However, the government does not consent to a remand for the district court to reconsider a related Guidelines issue, arguing that the defendant waived his right to appeal procedural sentencing errors as part of his plea agreement.

Because the issues raised on appeal are closely related, and it is within our discretion to control the scope of our mandate, we direct the district court to examine both issues on remand.

We VACATE the sentence and REMAND for further proceedings.

_____

ROBERT A. CULP, Garrison, NY, for Defendant-
Appellant Dwight Anderson.

GEOFFREY S. BERMAN, United States Attorney for the Southern District of New York (Anden Chow, Samson Enzer, Jared Lenow, Daniel B. Tehrani, <u>on the brief</u>), for Appellee United States of America.

DENNIS JACOBS, <u>Circuit Judge</u>:

When Dwight Anderson was sentenced to 120 months for federal drug offenses, the United States District Court for the Southern District of New York (Daniels, <u>J.</u>) "recommend[ed]" to the Bureau of Prisons that Anderson's federal sentence run concurrently with a yet-to-be-imposed state sentence for a parole violation. Anderson argues that the court acted on the erroneous assumption that it lacked the authority to impose a sentence that is concurrent or consecutive to a yet-to-be imposed state sentence (the "Concurrency Issue"). The government has consented to a limited remand on the Concurrency Issue. However, the government opposes Anderson's appeal of a related Guidelines issue: whether the district court misunderstood its authority to reduce Anderson's sentence below the statutory mandatory minimum to account for time served on his state sentence for a related offense (the "Mandatory Minimum Issue").

3

Opposing remand on the Mandatory Minimum Issue, the government cites Anderson's plea waiver of the right to appeal any sentence below 188 months' imprisonment. We conclude that in this case, in which the government has waived the appeal waiver for the limited purpose of correcting an error that does not reopen the many component sentencing decisions, it will not impair the efficacy of appeal waivers to exercise our control over our mandate to allow consideration on remand of a closely linked issue that likewise can be decided without unwinding the sentence as a whole.

Accordingly, as we remand pursuant to the government's waiver of the appeal waiver to permit the district court to impose concurrency (or not) with a state sentence for violation of parole, we likewise remand to the district court to clarify whether, in view of its authority to impose a sentence below the mandatory minimum to account for time served on a related state sentence, such a sentence is warranted here.

## BACKGROUND

This case, and the complexities the district court was required to unwind, arise from Anderson's busy career as a drug trafficker, and the ensuing criminal

4

proceedings against him in multiple jurisdictions.    The sequencing of those proceedings--from Anderson's March 2016 arrest in Pennsylvania to his June 2018 federal sentencing in New York--shows the relatedness of the two sentencing issues on appeal, and of the underlying offenses.

On March 4, 2016, while on parole for a 2013 drug conviction (the "2013 State Offense"), Anderson was arrested and detained in Pennsylvania on new state drug charges (the "2016 State Offense").    Shortly afterwards, while Anderson was incarcerated in Pennsylvania, federal prosecutors in New York charged Anderson separately, alleging that Anderson's state offenses were part of a broader violent drug trafficking conspiracy based in the Bronx (the "Federal Offense").    Anderson pled guilty to both the state and federal charges.

Thus, Anderson's March 2016 arrest was to lead to three separate sentencing proceedings: [1] an April 2016 proceeding for the 2016 State Offense in which a Pennsylvania state court sentenced Anderson to 18-36 months' imprisonment; [2] a June 2018 proceeding before Judge Daniels, who imposed a 120-month sentence (which Anderson now appeals); and [3] a further Pennsylvania state court proceeding to determine Anderson's sentence for

5

violating parole, which had not yet taken place at the time of Anderson's federal sentencing.[1]

As part of his October 2017 plea agreement with the federal prosecutors (the "Plea Agreement"), Anderson stipulated to an offense level of 33 under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and a mandatory minimum sentence of ten years' imprisonment. The Plea Agreement further stipulated that Anderson's two prior state convictions (one for the 2013 State Offense and the other for the 2016 State Offense) constituted relevant conduct for purposes of Anderson's federal sentencing.

Because Anderson and the government did not agree on certain sentencing enhancements for criminal history, the applicable Guidelines range was in dispute: Anderson advocated for 135 to 168 months, while the government advocated for 151 to 188 months.[2] Nevertheless, Anderson agreed that he

---

[1] It is unclear from the record whether Anderson's state court sentencing for his parole violation has taken place in the months since his June 2018 federal sentencing.

[2] In Anderson's Presentence Investigation Report (the "PSR"), the Probation Office sided with Anderson's interpretation, recommending a Guidelines range of 135-168 months.

would "not file a direct appeal . . . of any sentence within or below the Stipulated Guidelines Range of 135 to 188 months' imprisonment." It was further agreed that this waiver would be binding "even if the [district court] employs a Guidelines analysis different from that stipulated to" in the Plea Agreement; and that it would apply "regardless of whether the term of imprisonment is imposed to run consecutively or concurrently" with the undischarged portion of any other sentence that had been imposed on Anderson at the time of sentencing.

Defense counsel's sentencing memorandum emphasized Anderson's abandonment by his father, exposure to drugs at a tender age, and desire to leave drug dealing behind. Counsel argued that 120 months--the mandatory minimum, and the sentence imposed on several of Anderson's co-defendants-- would be an appropriate sentence.

The sentencing memorandum also urged the court to adjust Anderson's federal sentence to account for his state sentences, both for the 2016 State Offense (which had already been imposed) and his parole violation (which had not). Counsel explained that, when his federal sentencing took place, Anderson would be approximately two years into his state sentence of 18-36 months'

7

imprisonment for the 2016 State Offense, which the parties agreed was relevant conduct with respect to his Federal Offense. Accordingly, Counsel argued that the court should: [1] order that Anderson's federal sentence run concurrently with the remainder of his term of imprisonment for the 2016 State Offense, pursuant to U.S.S.G. § 5G1.3(b)(2); and [2] adjust his federal sentence downward for time already served for the 2016 State Offense, pursuant to § 5G1.3(b)(1). Counsel noted that when U.S.S.G. § 5G1.3(b)(1) applies, the sentencing court has authority to adjust a federal sentence below the statutory mandatory minimum, citing United States v. Rivers, 329 F.3d 119 (2d Cir. 2003). Finally, counsel argued that, pursuant to § 5G1.3(c), Anderson's federal sentence should likewise run concurrently with his yet-to-be imposed state sentence for violation of parole.

The Government's submission recommended a Guidelines sentence (135 to 168 months, per the PSR) but agreed with Anderson's position that his federal sentence should be adjusted downward to account for time served on his state sentence, and "set to run concurrently with his prior and anticipated state sentences." At the sentencing hearing, the government again recommended

8

that the court impose a sentence of 135 to 168 months, minus time served. Defense counsel again requested the mandatory minimum (120 months), with a further reduction for time served.

Ultimately, the district court imposed a 120-month sentence--the mandatory minimum. The court stated that this was "the appropriate sentence," (Sentencing Transcript ("Tr.") 9:5), having "already taken . . . into consideration" Anderson's time served, (Tr. 9:16-17). However, there is evidence of confusion about the court's authority to impose a sentence below the mandatory minimum. In dialogue with defense counsel (who argued for a 120-month sentence minus 27 months for time served) the court responded: "I can't subtract 27 months from the 120. There is a mandatory minimum sentence of 120." (Tr. 7:9-10.) Defense counsel referred the court to his submission, which cited authority holding that, in a case like Anderson's, a sentence can indeed be reduced below the mandatory minimum to account for time served for relevant conduct.

The following colloquy ensued between the district court, defense counsel (Mr. Pittell) and the government (Mr. Chow), indicating that the district court

9

remained uncertain about its authority to reduce the sentence below the mandatory minimum:

> THE COURT: You are asking me to impose what sentence?
>
> MR. PITTELL: 120 minus 27, so it would be 93 months.
>
> THE COURT: I understand. Mr. Chow, is that your position, also, that that's what the statute permits? Because my understanding –
>
> MR. CHOW: I apologize, your Honor. I don't know the answer to the Court's question.
>
> THE COURT: I want to make sure I understand both sides' position. Your position is that the mandatory minimum sentence of 120 months is within the range of sentence that you believe is reasonable?
>
> MR. CHOW: Of course, your Honor, yes.

(Tr. 7:22-8:8.) Soon after, the district court imposed a 120-month sentence, explaining that the court had "already taken into consideration" the fact that Anderson "has already served time in state court, and giv[en] greater consideration to the government's recommendation that I impose a sentence within the guideline range if that had not occurred." (Tr. 9:13-17.) The court also imposed five years of supervised release and a $100 special assessment.

10

Notably, the court announced up-front a final sentence of 120 months; it never articulated a *total* sentence that would be reduced to account for time served pursuant to § 5G1.3(b)(1). The government sought clarification: "Your Honor, just to make sure I understand the Court's ruling, the Court was inclined to sentence Anderson to a Guidelines sentence, but taking into account 5G1.3, the Court has downwardly departed to 120 months, is that correct?" The district court replied "Yes." (Tr. 11:5-10.)

Addressing the Concurrency Issue, defense counsel requested that Anderson's federal sentence run "concurrently with his state sentence that he's currently serving as well as the pending parole violation." (Tr. 11:16-17.) Here the record suggests some further confusion as to the extent of the district court's sentencing authority: while the court was willing to order that the federal sentence run concurrently with Anderson's current state sentence, the court stated that "there is nothing I can do about" the parole violation sentence that was yet to be imposed. (Tr. 13:9-10.) The court added that it would "recommend that [Anderson's sentence] run concurrently with any pending parole violation sentence," but that "it's clear it is up to the judge who decides to

11

resentence him on parole to decide whether or not that judge wants to run it concurrently." (Tr. 14:16-19.) The written judgment likewise reflected the district court's understanding that it lacked the authority to impose concurrent sentences with respect to Anderson's parole violation: "[t]his Court . . . respectfully *recommends* that this sentence run concurrently with any pending or currently imposed state sentence and concurrently with any pending parole violation sentence" (emphasis added). (App'x at 82.)

On June 11, 2018, Anderson submitted a letter motion to reconsider, suggesting that the district court's application of § 5G1.3 may have inadvertently resulted in a longer sentence for Anderson relative to his codefendants. Anderson argued that, although the court ostensibly imposed a 120-month sentence, an accounting for time served raised his effective sentence to 147 months--significantly longer than his codefendants' 120-month sentences. Anderson requested that the court reduce his sentence by 27 months to avoid an unwarranted disparity, and reiterated that Second Circuit precedent authorized the district court to do so notwithstanding the 120-month mandatory minimum.

The district court summarily denied reconsideration on June 19, 2018.

Despite his appeal waiver, Anderson filed a notice of appeal on June 20, 2018.

**DISCUSSION**

This Court reviews all sentences under a "deferential abuse-of-discretion standard." United States v. Dorvee, 616 F.3d 174, 179 (2d Cir. 2010). In both procedural and substantive aspects, the Court "review[s] sentences for abuse of discretion, a standard that 'incorporates de novo review of questions of law (including interpretation of the [Sentencing] Guidelines) and clear-error review of questions of fact.'" United States v. Bonilla, 618 F. 3d 102, 108 (2d Cir. 2010) (quoting United States v. Legros, 529 F. 3d 470, 474 2d Cir. 2008)).

**I**

On appeal Anderson argues that his sentencing was infected by two procedural errors: namely, that the district court misunderstood (1) its authority to order that the federal sentence run concurrently with a pending state sentence for a parole violation; and (2) its authority to reduce the federal sentence below the mandatory minimum pursuant to § 5G1.3(b)(1). Notwithstanding

Anderson's waiver of his right to appeal, the government has consented to a "limited remand" with respect to the Concurrency Issue.

On the Concurrency Issue, the government concedes that the district court "appeared not to realize that it had the authority to run the federal sentence concurrently to any eventual sentence that Anderson would receive in Pennsylvania state court as the result of a parole violation that the parties agreed was relevant conduct."    In fact, district courts generally have discretion to order that a sentence run concurrently or consecutively with an anticipated state sentence, Setser v. United States, 566 U.S. 231, 236-37 (2012); and § 5G1.3(c) explicitly recommends that concurrent sentencing "shall be imposed" with respect to anticipated sentences for relevant conduct.    See also United States v. Olmeda, 894 F.3d 89, 94 (2d Cir. 2018).

Although, as the government points out in this appeal, "the parties agreed" that Anderson's parole violation "was relevant conduct," the government also raises the possibility that the relevant Guidelines provision with

14

respect to the parole violation is not § 5G1.3(c), but rather § 5G1.3(d).[3]   Indeed,

the Application Notes to § 5G1.3 indicate as much:

> Subsection (d) applies in cases in which the defendant was on
> federal or state probation, parole, or supervised release at the time of
> the instant offense and has had such probation, parole, or
> supervised release revoked. Consistent with the policy set forth in
> Application Note 4 and subsection (f) of §7B1.3 (Revocation of
> Probation or Supervised Release), the Commission recommends that
> the sentence for the instant offense be imposed consecutively to the
> sentence imposed for the revocation.

U.S.S.G. § 5G1.3 app. n.4(C).   Whichever Guideline applies, it was (contrary to

what the district court seems to have assumed) well within the court's discretion

to order that Anderson's federal sentence should run concurrently--or

consecutively--with his state sentence for violation of parole.[4]

Clear evidence that a district court misunderstood its authority to impose a

concurrent sentence is a sufficient basis to remand for resentencing.   Olmeda,

---

[3] Section 5G1.3(d) states that, whether or not an undischarged sentence arises
from relevant conduct, the federal sentence "*may* be imposed to run
concurrently, partially concurrently, or consecutively . . . to achieve a reasonable
punishment for the instant offense."   28 U.S.S.C. § 5G1.3 (emphasis added).
[4] See generally Gall v. United States, 552 U.S. 38, 49-51 (2007) (explaining the
advisory nature of the Guidelines and the courts' discretion to vary from their
recommendations).

15

894 F.3d at 94.  The only remaining question is whether the proceedings on remand should, as the government argues, be limited to the Concurrency Issue, or whether the district court should also have the opportunity to reconsider the Mandatory Minimum Issue.

## II

The government argues that because Anderson agreed to waive his right to appeal his sentence, it is the government's prerogative to consent to a remand, and to limit the issues that the district court may consider during resentencing. We are not aware of controlling precedent on the question of whether the government is entitled to partial enforcement of an appeal waiver.  It is considered here for the first time.

This Court has repeatedly held that a knowing and voluntary waiver of the right to appeal a sentence is presumptively enforceable.  See, e.g., United States v. Coston, 737 F.3d 235, 237 (2d Cir. 2013); United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2012).  While we have declined to enforce such waivers in certain exceptional circumstances, these exceptions "occupy a very circumscribed area of our jurisprudence" and "we have upheld waiver provisions even in

16

circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) (citing United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995)).

Ordinarily, when a defendant's plea agreement forecloses appeal of a sentence within a stipulated range, the government's remedy is dismissal of any appeal. Because it is presumed that, in obtaining an appeal waiver, "the Government's motivating purpose [is] decreased effort and expense of protracted litigation," United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997), we have observed that "[o]nly the dismissal of [the] appeal will afford the prosecution the benefit of its bargain." Yemitan, 70 F.3d at 748. But here, the government has not requested that we dismiss Anderson's appeal altogether; it seeks a remand for resentencing on the Concurrency Issue--but on that issue only.

As a general matter, appellate courts have broad discretion to mandate further proceedings on remand. See 28 U.S.C. § 2106 (authorizing "any . . . court of appellate jurisdiction" to "remand [a] cause and . . . require such further

17

proceedings to be had as may be just under the circumstances"). In the sentencing context, in which the various aspects of a sentence and the factors that influence it may be interrelated, our discretion extends to the scope of issues to be considered by the resentencing court:

> Because a district court's "original sentencing intent may be undermined by altering one portion of the calculus," an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence ... so that, on remand, the trial court can reconfigure the sentencing plan ... to satisfy the sentencing factors in 18 U.S.C. § 3553(a)".

Pepper v. United States, 562 U.S. 476, 507 (2011) (quoting United States v. White, 406 F.3d 827, 832 (7th Cir. 2005) and Greenlaw v. United States, 554 U.S. 237, 253 (2008)) (citations omitted). See also United States v. Malki, 718 F.3d 178, 182 (2d Cir. 2013) (noting that, although the default rule in sentencing appeals is a limited remand, "a mandate may, of course, call for *de novo* resentencing, thereby allowing parties to reargue issues previously waived or abandoned").

Here, the two appellate issues are undoubtedly interrelated: both raise the possibility that the court misunderstood its authority to adjust aspects of Anderson's federal sentence to fairly account for time served (or time yet-to-be-served) on related state charges. As set out above, the record in this case

18

suggests that the district court: (1) misunderstood its authority to impose concurrent sentences, <u>supra</u> at 11-12; and (2) was, at best, uncertain that it had authority to reduce Anderson's federal sentence below the mandatory minimum, <u>supra</u> at 9-11.

Ordinarily, we are "entitled to assume that the sentencing judge understood all the available sentencing options, including whatever departure authority existed under the circumstances of the case." <u>United States v. Rivers</u>, 50 F.3d 1126, 1131 (2d Cir. 1995). However, we are "wary of making such an assumption 'where the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available [sentencing] option,' and we are more inclined, in the face of such ambiguity, to remand for clarification." <u>United States v. Sanchez</u>, 517 F.3d 651, 665 (2d Cir. 2008) (quoting <u>Rivers</u>, 50 F.3d at 1132). Here, the district court had the discretion to reduce a mandatory minimum sentence to reflect time served under an undischarged state sentence, <u>United States v. Rivers</u>, 329 F.3d 119, 122-23 (2d Cir. 2003); but the district court's comments at sentencing suggested confusion on this point, and the government failed to provide clarification when given the opportunity.

19

The government argues that there is no reason to remand to the district court on the Mandatory Minimum Issue, because the district court's comments at sentencing indicate that, even if it knew it had the opportunity to sentence below the mandatory minimum, it would not have done so. For instance, the government points to the district court's statements that it believed that Anderson's 120-month sentence was "not greater than what's necessary in this case" and already accounted for his time served:

> I will impose the mandatory minimum sentence, 120 months, and I have done that considering that he has already served time in state court and giving greater consideration to the government's recommendation that I impose a sentence within the guideline range if that had not occurred.

(Tr. 9:12-16.)

However, a sentence may nevertheless be remanded if other parts of the record suggest that the district court's sentence may have been influenced by error. See Sanchez, 517 F.3d at 666 (concluding remand was still appropriate, notwithstanding the district court's statement that "even if I could I would not impose a sentence less than I have determined," because, at other times, the court indicated that it might consider reducing the sentence but lacked the authority).

20

Here, the district court (1) expressed uncertainty about its authority to impose a sentence below the mandatory minimum; and then (2) set Anderson's final sentence at the mandatory minimum (120 months) without first announcing a higher sentence, and then reducing it by Anderson's 27 months' time served pursuant to § 5G1.3(b)(1). Together, these facts suggest that the court may not have given adequate consideration to whether a total sentence of less than 147 months, reduced below the mandatory minimum to account for time served on his state sentence, would have been sufficient.

We hold that Anderson's appeal waiver does not preclude us from directing the district court to consider the Mandatory Minimum Issue alongside the Concurrency Issue. We do so after considering: the government's consent to a limited remand; this Court's traditional discretion to control the scope of our mandate in sentencing cases; and the close relationship between the issues raised on appeal, both of which implicate the district court's responsibility to consider the full impact of Anderson's related state sentences on his effective term of imprisonment, and neither of which requires *de novo* resentencing. Therefore, on remand, we direct the district court to: (1) order that Anderson's federal

21

sentence run concurrently, consecutively, or partially concurrently with his state sentence for violation of parole; and (2) consider and clarify whether, in view of its authority to choose a sentence that falls below the mandatory minimum when adjusted to account for time served, it concludes such a sentence is warranted in this case.

## CONCLUSION

For the reasons stated above, Anderson's sentence is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.